IN RE TRUST CREATED BY THE WILL OF ELSIE R. SA-
LIMES : SALIMES, by Guardian *ad litem,* and another,
Appellants, v. ARNOLD, Trustee, and others, Re-
spondents.

*No. 245.    Argued May 5, 1969.—Decided June 6, 1969.*
(Also reported in 168 N. W. 2d 157.)

For the appellants there was a brief and oral argument by *John J. Byrnes* of Elkhorn.

For the respondents there was a brief by *Rodney A. Thorson* of Elkhorn, joined by *William H. Freytag* of Elkhorn, guardian *ad litem,* and oral argument by *Mr. Thorson.*

ROBERT W. HANSEN, J.   Six of the seven members of this court agree that the judgment of trial court should be reversed and that an order should be entered by the trial court directing the trustee to make funds available, out of the trust, for petitioner Christopher James Salimes to attend the Layton School of Art for the school year 1968-1969.

Three members of this court—Mr. Chief Justice HAL-LOWS, Mr. Justice HANLEY and the writer of this opinion—would do so holding that the discretion given the trustee under the probate court judgment construing the will was limited to financial factors: *i.e.,* the financial needs of the grandson and the financial ability of the trust to pay.   It did not include the right or discretion of the trustee to decide for and on behalf of the grandson what particular college or university he was to be required to attend.   The authority granted to the trustee by the judgment construing the will is to *financially* assist any of the grandchildren with *a* higher education subsequent to high school.

The issue between the trustee on the one hand and the grandson and his father on the other necessarily involves the two educational institutions involved.   Wis-

consin State University-Whitewater is a part of the state university system. It provides a general education, with an opportunity to major in courses of special interest and competence of the student. The Layton School of Art is a highly regarded institution of secondary education specializing in training students in the special area of art. The dispute as to the comparative advantages of such specialized education and the more generalized approach is civilization-long. It is not for this court to choose between the two schools of thought. Neither, as we see it, is it for the trustee to do so.

It is true that the cost of room, board and tuition would be $1,956 at Layton, compared to $1,000 at Whitewater. However, it is not claimed that the trust fund is to pay all costs involved at either school. The grandson testified that he could probably make up some of the difference by part-time work, and the father testified that he could contribute to making up the cost difference. It was for the trustee to determine what was reasonably necessary in the way of financial assistance to the grandson's securing a higher education. It was within his discretion to determine how much the grandson needed and how much the trust fund, considering the other drains upon it, could contribute. Such discretion in the area of financial considerations did not extend to telling the grandson the school he would have to attend if he was to receive trust fund assistance at all.

This approach places emphasis upon the intent of the testatrix, as stated in the judgment construing the will, to financially assist any of her grandchildren who want to secure a higher education. It recognizes that the will provides that the residue of the trust goes to the grandchildren when the youngest reaches the age of twenty-five. It sees no reason for adding to the will or to the judgment construing the will an authority to a trustee to determine what kind of higher education any of the grandchildren are to be required to seek and secure, or

what particular school they are to be required to attend to qualify for the trust fund assistance. So these three justices would reverse, directing the trial court to grant the relief prayed for in plaintiff's action finding the refusal of the trustee based on matters outside his discretion.

Three members of this court—Justices BEILFUSS, HEFFERNAN and CONNOR T. HANSEN, would hold that the trustee's discretion did extend to the matter of what college or type of college the grandson was to attend. However, they would find that the trustee's exercise of discretion was reviewable by the court as to unreasonableness or abuse of discretion. They would further find that the exercise of discretion on this record was unreasonable.

The grandson, Christopher, placed in the record several reasons why he wanted to transfer from Whitewater to Layton, including that Whitewater did not offer the courses he wanted to become a commercial artist or industrial designer, that those taking art courses at Whitewater were not serious about a career in art and designing, that he would be on probation if he went back to Whitewater.

Christopher's high school principal testified that Christopher was slightly below average in academic ability and would have difficulty in college academic courses. His only grades above a "C" in high school were in art and physical education. The principal testified that it was his and the school guidance counsellor's recommendation that it would be in Christopher's best interests to transfer to Layton.

The dean of students at Whitewater testified that Christopher would have more success in art than in other areas of study and stated that the transfer to Layton might be "most beneficial." The dean concluded that Christopher's "weak areas have been in those areas

outside the field of art, such as history and English." The boy's father also favored the transfer.

The trustee's reasons for nonapproval of the transfer are contained in a written document, entitled "Exercise of Discretion of Trustee Concerning Payment by the Trust Toward the Higher Education of Christopher James Salimes." They are stated as follows:

"Because of his grade point improvement in the second semester and the fact that he may again attend the Wisconsin University, Whitewater, the Trustee believes the best interests of said Christopher James Salimes dictate that he again attend said school at Whitewater . . . ."

It is true that Christopher had a grade point average of 1.18 for the first semester at Whitewater, an average of 2.35 for the second semester. It is also true that he could return to Whitewater, but only on probation. However, on the other side of the scales must be placed the wishes of the grandson and his father, the independent judgments and recommendations of the high school principal and guidance counsellor, the recommendation of the dean of students at Whitewater, plus the demonstrated difficulties of the student in subjects away from the field of art.

The mere fact that a trustee is given discretion does not authorize him to go beyond the bounds of reasonable judgment. 1 Restatement 2d, *Trusts*, p. 403, sec. 187, comment *e*. In general, a court does not favor a construction which confers arbitrary or capricious authority on the trustee. *See* Annot. (1948), 2 A. L. R. 2d 1383, 1400 *et seq*. The general duties of a trustee to exercise reasonable care and judgment require that even a broad discretion be exercised upon judicious and responsible consideration, subject to review by the court for abuse of discretion. 54 Am. Jur., *Trusts*, p. 142, sec. 180.

The three justices finding an abuse of discretion do not imply that the trustee acted in bad faith or that he

was influenced by improper considerations. They do find that his judgment on the record here established must be found to have been unreasonable and beyond the bounds of sound discretion.

"It seems too plain for argument that whether the widow should receive anything beyond the income from the estate was a matter left wholly and entirely to the discretion of the trustees and to the discretion of no one else. As the testator laid down no rules by which this discretion was to be exercised, it is not apparent how a court may assume to do so. He made the widow and his brother his trustees. He evidently reposed the utmost confidence in his brother to deal fairly with his widow,— very likely feeling that his brother would be as considerate of her comfort and welfare as he himself would be. He made no reservation, attached no limitation, and prescribed no rule or condition to govern the trustees in the exercise of their discretion. In view of the unqualified discretion thus vested, a court should not assume to lay down a rule for its exercise." *Estate of Lyons* (1924), 183 Wis. 276, 280, 197 N. W. 710.

So three justices find that the insistence that the grandson return to Whitewater was not within the area of discretion granted to the trustee by the will and judgment construing the will. Three justices find that the control of the school to be attended was within such area of trustee discretion, but that the exercise of such discretion was unreasonable and outside the bounds of sound discretion. One justice would hold that the exercise of discretion was not arbitrary or capricious and was within the scope of the trustee's discretion. Three plus three here add up to a reversal of the trial court's order.

*By the Court.*—Order reversed, and cause remanded for proceedings consistent with this opinion.